UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HILLARY BROOKS,<br><br>Plaintiff,<br><br>v.<br><br>JUDGE JANET CHUNG; LEA ENNIS; VALERIE VILLACIN; and SMITH GOODFRIEND, P.S.,<br><br>Defendants. | C26-2043 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion for partial summary judgment, docket no. 3, brought by plaintiff Hillary Brooks, and a motion to dismiss brought by defendants Valerie Villacin and Smith Goodfriend, P.S., docket no. 20, in which defendants Judge Janet Chung and Lea Ennis have joined in part, docket no. 31.[1] Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

---

[1] Brooks has objected to Judge Chung's and Ennis's joinder, arguing that (i) these defendants waived any challenge to the Court's subject-matter jurisdiction by filing an answer, and (ii) the motion in which they have joined does not concern them. Brooks's objection, docket no. 34, is OVERRULED. Lack of subject-matter jurisdiction may be raised by a party (or by the Court sua sponte) at any time, and the filing of a responsive pleading does not waive such defense. *See* Fed. R. Civ. P. 12(h). The pending motion to dismiss adequately addresses whether the Court has subject-matter jurisdiction with regard to the claims that are asserted against all defendants, including Judge Chung and Ennis.

**Background**

In this action, Brooks asserts five claims, four pursuant to 42 U.S.C. § 1983 and one under Washington common law. Compl. at ¶¶ 106–120 (docket no. 1).[2] Brooks's first, second, and fourth claims under § 1983 are brought against all defendants, and as to those claims, Villacin and Smith Goodfriend, P.S. (the "Firm") seek dismissal on grounds that (i) the Court lacks jurisdiction over Brooks's claims, and (ii) Brooks's claims against Villacin and the Firm are not cognizable because these defendants have not acted "under color of" state law within the meaning of § 1983. Judge Chung and Lea Ennis, who is the Court Administrator/Clerk for Division I of the Washington Court of Appeals, join only in the argument that the Court lacks jurisdiction as to Brooks's first, second, and fourth claims. They have not separately moved with regard to Brooks's third claim under § 1983, which is asserted against both of them, or Brooks's fifth claim alleging defamation, which is brought solely against Judge Chung. Nevertheless, because the Court's jurisdiction has been questioned, the Court will also consider whether the third and fifth claims must be dismissed. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party").

In her motion for partial summary judgment, Brooks asks the Court to rule that a previous decision of the Washington Court of Appeals is "void *ab initio* for want of both

---

[2] Brooks has also pleaded, as a sixth count, a prayer for declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202. *See* Compl. at ¶¶ 121–23 (docket no. 1). This request is not an independent, substantive claim, and it is STRICKEN without prejudice to requesting a declaratory remedy.

personal and subject matter jurisdiction." Pl.'s Mot. at 1 (docket no. 3). To understand the context of Brooks's request, the Court begins with a review of the underlying state court litigation. Brooks was previously married to Robert Cooney. *See In re Marriage of Cooney & Brooks*, No. 84720-1-I, 2023 WL 8185931, at *1 (Wash. Ct. App. Nov. 27, 2023). In 2020, dissolution proceedings commenced and, during his related deposition, Cooney revealed that he was the trustee of his grandmother's revocable trust. *Id.* Brooks sought and was granted an order compelling Cooney to produce documents concerning the trust, but days before the deadline for Cooney to disclose the materials, the parties settled and entered into a Washington Civil Rule ("CR") 2A separation contract and property settlement agreement (the "CR 2A Agreement"). *Id.*

Over a year later, Cooney's grandmother died and, through filings relating to probate, Brooks learned more about the trust. *Id.* Brooks then brought a motion under CR 60(b) to vacate the dissolution decree, accusing Cooney of fraud, misrepresentation, and other misconduct in connection with the trust. *See id.* at *1–2. The trial court denied Brooks's CR 60(b) motion, finding that Brooks knew about the trust, as well as Cooney's status as a beneficiary of the trust, before she signed the CR 2A Agreement, and that Cooney's contingent interest in his grandmother's revocable trust was not an asset and therefore not material to the outcome of the dissolution proceedings. *Id.* at *2. Brooks appealed, and a three-judge panel of the Washington Court of Appeals, which included Judge Chung, affirmed the denial of Brooks's CR 60(b) motion. *Id.* at *2–9. On appeal in *Marriage of Cooney & Brooks*, Cooney was represented by *inter alia* defendant Villacin and Catherine Wright Smith, a named partner at the Firm.

Dissatisfied with the results of her CR 60(b) motion, Brooks served Cooney with a demand for arbitration, invoking an arbitration clause in the CR 2A Agreement. *See* Ex. A to Brooks Decl. (docket no. 4 at 5–9). Cooney reacted to this demand by filing a motion in King County Superior Court seeking to have Brooks's claims declared not arbitrable. *See* Ex. C to Brooks Decl. (docket no. 4 at 22–25). Brooks sought to strike Cooney's motion, and she contemporaneously moved to compel arbitration. *See* Ex. E to Brooks Decl. (docket no. 4 at 36–42). Brooks's motion to compel arbitration was denied by the King County Superior Court for two alternative reasons: (i) she had waived her arbitration rights by litigating the same issues in her CR 60(b) motion; and (ii) her claims were barred by res judicata and the law of the case. *Id.* (docket no. 4 at 40–41).

Acting pro se, Brooks appealed to the Washington Court of Appeals. Villacin and Smith, along with another lawyer who was not employed by the Firm, represented Cooney. In an unpublished decision and without oral argument, the Washington Court of Appeals affirmed the denial of Brooks's motion to compel arbitration. *See* *Cooney v. Brooks*, No. 86951-5-I, 2025 WL 1684900, at *1 (Wash. Ct. App. June 16, 2025). Judge Chung authored the opinion in *Cooney*, which Brooks has denominated "*Cooney II*." *See* Pl.'s Mot. at 1 n.1 (docket no. 3). In *Cooney II*, the Washington Court of Appeals reasoned that Brooks had waived her right to arbitrate by previously pursuing the same relief via her CR 60(b) motion, *i.e.*, a ruling that Cooney had a property interest in his grandmother's trust, which he had been obligated to disclose during the dissolution proceeding. *See* 2025 WL 1684900, at *2–4. The panel did not reach the question of whether res judicata or the law of the case also precluded arbitration of Brooks's claims.

_Id._ at *4. In November 2025, the Washington Supreme Court denied Brooks's petition for discretionary review. _Cooney v. Brooks_, 578 P.3d 767 (Wash. 2025).

In June 2026, Brooks commenced this action. _See_ Compl. (docket no. 1). Citing to provisions of Washington's Uniform Arbitration Act ("UAA"),[3] Brooks contends that the decision of the Washington Court of Appeals in _Cooney II_ is "an extra-jurisdictional nullity" because Cooney did not properly commence the proceeding in King County Superior Court in which he asked that Brooks's claims be deemed not arbitrable. _See_ Pl.'s Mot. at 1 & 5–7 (docket no. 3). Brooks, who is an attorney, further asserts that she was unconstitutionally disadvantaged by her relegation to the "pro se" track at Division I, as a result of which she was not afforded an opportunity to present oral argument to the Washington Court of Appeals, was the recipient of an unpublished (as opposed to a published) decision, and was therefore statistically unlikely to prevail on a motion for discretionary review by the Washington Supreme Court. _See_ Compl. at ¶¶ 80–98 (docket no. 1); _see also id._ at ¶ 94 (suggesting that, in civil matters, discretionary review is granted by the Washington Supreme Court with respect to twenty-two percent (22%) of published decisions and only two percent (2%) of unpublished decisions). Brooks also alleges, in conclusory fashion, that Villacin and the Firm were "joint participants in a coordinated enterprise" with Judge Chung and Court Administrator/Clerk Ennis to

---

[3] In her operative pleading, in addition to the UAA, Brooks refers to the Federal Arbitration Act ("FAA"), but she fails to explain how the FAA would apply to the CR 2A Agreement, which was between two Washington residents and did not evidence a transaction involving interstate commerce. _See_ 9 U.S.C. § 2; _see also_ Compl. at ¶ 15 (docket no. 1) (indicating that, when the CR 2A Agreement was executed, both Brooks and Cooney were citizens of Washington).

"bypass the mandatory jurisdictional limitations" of the UAA and to "reclassify" Brooks's "professional status to shield the resulting nullity from apex review through a downgraded appellate track." *Id.* at ¶ 105.

Brooks contends, in her first claim, that her Fourteenth Amendment rights were violated by deprivation of (A) her property interests; (B) an equal process; and (C) her liberty interest in her professional reputation. *Id.* at ¶¶ 106–11. In her second claim, Brooks asserts that defendants retaliated against her for exercising her First Amendment rights, and in her fourth claim, Brooks, who is now a citizen of Oregon, pleads a violation of the Privileges and Immunities Clause of Article IV of the United States Constitution. *Id.* at ¶¶ 113 & 117. The Court first turns to the question of whether it has subject-matter jurisdiction over Brooks's claims, and then addresses whether any remaining claims lack merit because they are aimed at private, not state, actors.

## Discussion

### A. Defendants' Motion to Dismiss

#### 1. Rule 12(b)(1) - Lack of Jurisdiction

With respect to a facial jurisdictional challenge brought under Federal Rule of Civil Procedure 12(b)(1), as in this matter, a plaintiff is entitled to the same safeguards that apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The factual allegations of the complaint must be accepted as true, and the pleading must be construed in the light most favorable to the non-moving party. *See id.*; *see also Does v. Univ. of Wash.*, No. C16-1212, 2016

WL 5792693, at *3–4 (W.D. Wash. Oct. 4, 2016) (citing Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 896, 899–900 (9th Cir. 2007)).

In seeking dismissal of Brooks's claims for lack of subject-matter jurisdiction, Villacin and the Firm, joined by Judge Chung and Ennis, rely on the Rooker–Feldman doctrine, which prevents federal district courts from deciding "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (summarizing Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), and D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983)). The underlying principle of the Rooker–Feldman doctrine is that federal district courts have "strictly original" jurisdiction, and only the United States Supreme Court may "exercise appellate authority 'to reverse or modify' a state-court judgment." Id. (quoting Rooker, 263 U.S. at 416). The preclusive effect of the Rooker–Feldman doctrine applies to state-court determinations that are judicial in nature, and not to those that are legislative; for example, in Feldman, a District of Columbia court rule that did not allow graduates of unaccredited law schools to be admitted to the bar was deemed to be legislative and could be challenged in federal district court, but the D.C. court's refusal to grant a waiver of the rule was adjudicative and could not be contested in a federal action. See id. at 285–87 (discussing Feldman, 460 U.S. at 476–87).

/ / /

/ / /

**a. Deprivation of Property Interest (Count 1, Subcount A)**

In claiming that she was deprived of her property interest in a "contractual civil chose in action" in violation of the Fourteenth Amendment, *see* Compl. at ¶ 107 (Count 1, Subcount A) (docket no. 1), Brooks seeks relief that the Court does not have jurisdiction to provide. Brooks contends that the King County Superior Court lacked jurisdiction to deny her motion to compel arbitration because Cooney did not initiate a separate action (and serve her in the manner required for a summons in a civil case) and, thus, the subsequent decision of the Washington Court of Appeals is void. Brooks's analysis is flawed on multiple levels. First, contrary to Brooks's contention, the UAA did not require Cooney to commence a new lawsuit; he merely had to make a motion and provide notice in an appropriate manner. *See* RCW 7.04A.050 ("an application for judicial relief . . . must be made by motion to the court and heard in the manner and upon the notice provided by law or rule of court for making and hearing motions," and "[n]otice of an initial motion . . . must be served in the manner provided by law for the service of a summons in a civil action *unless a civil action is already pending involving the agreement to arbitrate*" (emphasis added)).

Second, any lack of jurisdiction on the part of the King County Superior Court did not extend to the Washington Court of Appeals. Indeed, *Rooker* and *Feldman* are examples of the jurisdiction exercised by an appellate court to conclude that the lower court lacked jurisdiction. The UAA expressly authorizes appeals from orders denying motions to compel arbitration, RCW 7.04A.280(1)(a), and the party that sought review by the Washington Court of Appeals was Brooks (not Cooney). Brooks will not now be

heard to complain that the Washington Court of Appeals could not review the King County Superior Court's denial of her motion to compel arbitration.

Finally, as Brooks has acknowledged by moving for a declaration that *Cooney II* is void, to prevail on her § 1983 (Fourteenth Amendment) deprivation-of-property-interest claim, she must establish that the Washington Court of Appeals erred in affirming the King County Superior Court's finding that she had waived her right to arbitration, or in other words, her "contractual civil chose in action" premised on the arbitration clause in the CR 2A Agreement. The *Rooker–Feldman* doctrine, however, prohibits the Court from determining that a "state court's decision was wrong and thus void." *See Henrichs v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007); *see also Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir. 2012) (observing that when a plaintiff complains in federal district court of "a legal wrong allegedly committed by the state court" and seeks relief from the state court's judgment, then the plaintiff has brought a "de facto appeal" that is "forbidden" by the *Rooker–Feldman* doctrine). Brooks's deprivation-of-property-interest claim (Count I, Subcount A) must be dismissed for lack of subject matter jurisdiction.

**b. Deprivation of Liberty Interest (Count 1, Subcount C, Part 1) and Violation of Privileges and Immunities Clause (Count IV, Part 1)**

The same reasoning applies to Brooks's claims that (i) she was stigmatized in violation of her liberty interest in her professional reputation by the "merits-based extinguishment" of her "contractual property assets," *see* Compl. at ¶ 111 (Count 1, Subcount C, Part 1) (docket no. 1), and (ii) discriminatorily treated because of her Oregon citizenship in connection with the "merits-based strike of her arbitration"

demand, see id. at ¶ 117 (Count IV, Part 1). To demonstrate either a stigma or an injury resulting from any discriminatory treatment, Brooks must prove that the "merits-based" decision of the Washington Court of Appeals was incorrect. These claims therefore constitute de facto appeals over which the Court lacks jurisdiction. See Cooper, 704 F.3d at 779 (a federal claim is "inextricably intertwined" with a state-court judgment and therefore precluded by the *Rooker–Feldman* doctrine when "the relief requested in the federal action would effectively reverse the state court decision or void its ruling" (quoting *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002))).

### c. No Relevant Exception to *Rooker–Feldman* Doctrine

Brooks asserts that the *Rooker–Feldman* doctrine does not apply for four reasons, all of which lack merit. First, Brooks's reliance on *In re Gruntz (Gruntz v. County of Los Angeles)*, 202 F.3d 1074 (9th Cir. 2000), and *In re Pavelich (Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP)*, 229 B.R. 777 (B.A.P. 9th Cir. 1999), to invoke a voidness exception to the *Rooker–Feldman* doctrine is misplaced. Neither the analysis nor the result in *Gruntz* supports Brooks's position.[4] *Pavelich* is factually and

[4] In *Gruntz*, the debtor was twice prosecuted, convicted, and sentenced by California courts for failing to pay child support. 202 F.3d at 1077. The debtor filed an adversary proceedings asking that the bankruptcy court declare the state criminal proceedings void as violative of the automatic stay imposed by the Bankruptcy Code. *Id.* (citing 11 U.S.C. § 362). The Ninth Circuit held that federal courts are not bound by state court modifications of the automatic stay, but the automatic stay does not enjoin state criminal prosecutions. *Id.* at 1077 & 1087–88. Thus, the state court judgments at issue in *Gruntz* were not void, and the debtor's adversary proceeding was properly dismissed.

legally distinguishable, and it does not support Brooks's contention that, notwithstanding the Rooker–Feldman doctrine, this Court has jurisdiction to decide a de facto appeal from Cooney II.[5]

Second, Brooks's attempt, citing to Noel v. Hall, 341 F.3d 1148 (9th Cir. 2003), to argue that Cooney II is not a final decision, but rather only parallel state litigation as to which the Rooker–Feldman doctrine does not apply, is frivolous; the Washington Supreme Court's denial of discretionary review rendered Cooney II final. Third, Brooks's reference to "fraud" as a basis for maintaining her federal action to invalidate Cooney II, see Pl.'s Resp. at 9 (docket no. 28) (citing Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004)); see also Kougasian, 359 F.3d at 1141 ("Rooker–Feldman . . . does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud."), entirely misses the mark; the operative pleading does not

---

[5] In Pavelich, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") held that a bankruptcy court has jurisdiction to enforce a bankruptcy discharge in the face of a contrary state court judgment. 229 B.R. at 779, 781–84. After the debtors in Pavelich received discharges, the law firm that had rendered services to them sued them in state court to collect unpaid fees. Id. at 780. The state court entered judgment for the fees incurred for work performed after the bankruptcy proceedings commenced. Id. The BAP concluded that the bankruptcy court "erred when it ruled that the Rooker–Feldman doctrine stripped it of jurisdiction to consider whether the state court's judgment was void ab initio and whether the discharge injunction had been violated." Id. at 783. Notably, however, the BAP made no ruling concerning whether the state court judgment was void, and it acknowledged that state courts "have considerable authority to except particular debts from discharge." See id. at 783–84. Any erroneous determination regarding which specific debts are excepted from discharge would constitute "mere legal error on a matter over which [the state court had] subject matter jurisdiction," such judgment would not be viewed as "void" (rather than merely "voidable") unless the automatic stay had not expired, and any such error could be corrected only through the "ordinary direct review processes" within the state court system. See id. at 784.

contain a fraud claim or even mention fraud, and it does not satisfy the requirements of Federal Rule of Civil Procedure 9(b) for alleging fraud.

Finally, Brooks's argument concerning the "source of the injury," *see* Pl.'s Resp. at 9 (docket no. 28) (citing *Noel*, 341 F.3d at 1165 (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728–29 (7th Cir. 1993))), simply misapprehends jurisprudence on the subject. In *Noel*, the Ninth Circuit explained that, "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court," but "[i]f, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission ***by an adverse party***, *Rooker–Feldman* does not bar jurisdiction." 341 F.3d at 1164 (emphasis added). In the latter situation, "state law determines whether the defendant prevails under principles of preclusion." *Id.* (quoting *GASH*, 995 F.2d at 728). Brooks describes the source of the injury as the "failure to disclose contractual assets, followed by trespass to an arbitral remedy underway." Pl.'s Resp. at 9 (docket no. 28). The alleged failure to disclose Cooney's status as a trustee and beneficiary of his grandmother's trust was not, however, an action of "an adverse party" in this litigation; Cooney is not named as a defendant in this matter. Contrary to Brooks's contention, the sources of the injury about which she has sued in this case are the decisions of the Washington Court of Appeals in *Marriage of Cooney & Brooks* and *Cooney II*, and the *Rooker–Feldman* doctrine deprives this Court of subject matter jurisdiction. In addition, to the extent that Brooks's federal claims could be viewed as premised on Cooney's behavior in the prior dissolution proceedings,

the rulings of Division I would preclude such claims under res judicata and/or collateral estoppel principles, and thus, Brooks's "source of the injury" theory leads nowhere.

**d. Claims Dismissed for Lack of Jurisdiction**

With regard to the three claims discussed above, namely (i) deprivation of property interest (Count 1, Subcount A), (ii) deprivation of liberty interest via "merits-based extinguishment" of "contractual property assets" (Count 1, Subcount C, Part 1), and (iii) violation of the Privileges and Immunities Clause (discriminatory treatment based on Oregon citizenship) in connection with the "merits-based strike" of the arbitration demand (Count IV, Part 1), the Rule 12(b)(1) motion to dismiss is GRANTED, and those claims are DISMISSED for lack of subject-matter jurisdiction as to all defendants. As with a Rule 12(b)(6) motion, in deciding a Rule 12(b)(1) motion, the Court must consider whether leave to amend should be granted or whether "the pleading could not possibly be cured by the allegation of other facts." *Does*, 2016 WL 5792693, at *4 (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). The Court is persuaded that Brooks could not possibly cure her pleading by alleging additional or different facts, and thus, leave to amend will not be granted.

**2. Rule 12(b)(6) - Lack of Cognizable Claim Against Private Actor**

With regard to the remaining claims against Villacin and the Firm, specifically (i) deprivation of equal process (Count 1, Subcount B), (ii) deprivation of liberty interest via "administrative [pro se] status change" (Count 1, Subcount C, Part 2), (iii) retaliation in violation of the First Amendment (Count 2), and (iv) violation of the Privileges and

Immunities Clause (discriminatory treatment based on Oregon citizenship) relating to the "administrative [pro se] status change" (Count IV, Part 2), the pending motion seeks dismissal pursuant to Rule 12(b)(6); Judge Chung and Ennis do not join in this portion of Villacin's and the Firm's motion. To withstand a Rule 12(b)(6) challenge, a complaint must contain "enough" factual allegations "to raise a right to relief above the speculative level" and "nudge" the asserted claims "across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). Brooks's operative pleading does not do so with respect to her § 1983 claims against Villacin and the Firm.

To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and/or laws of the United States and show that the alleged deprivation was "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Traditionally, a state actor, within the meaning of § 1983, is a person who has exercised power that was "possessed by virtue of state law and made possible only because" the individual was "clothed with the authority of state law." *Id.* at 49. Neither Villacin nor the Firm were employees of the State of Washington during the relevant period, and they were not discharging duties delegated to them or allegedly abusing positions given to them by the State of Washington. *See id.* at 49–50 (observing that, with the notable exception of public defenders, state employees are usually state actors for purposes of § 1983, and that a § 1983 defendant "acts under color of state law when he abuses the position given to him by the State"). Rather, Villacin and the Firm were private (not public) entities, employed by Cooney (not the State of Washington) to represent him before the Washington Court of Appeals.

Brooks attempts to convert Villacin and the Firm into state actors by alleging that they conspired with Judge Chung and/or Ennis to deprive Brooks of her constitutional rights. Brooks, however, offers no facts to support this accusation of wrongdoing. She has provided nothing more than conclusory assertions, unwarranted deductions of fact, unreasonable inferences, and wild speculation, and the Court need not accept any of these allegations as true. *See* *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also* *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (affirming the grant of summary judgment in favor of the defendants -- two attorneys who had represented the plaintiffs' former employee in a case accusing the plaintiffs of violating the Racketeering Influence and Corrupt Organization Act -- reasoning that the plaintiffs had "presented no specific facts, other than alleging [the trial judge] made erroneous decisions, from which a conspiracy could be inferred," the plaintiffs did not allege "any facts to demonstrate an agreement" between the trial judge and the lawyers, and the "essence" of the plaintiffs' insufficient conspiracy claims was that "they litigated and lost").

Villacin and the Firm did not become state actors by simply presenting arguments on Cooney's behalf to the Washington Court of Appeals, and their success as advocates does not itself suggest that they colluded with Judge Chung or Ennis or otherwise acted improperly in securing their victory. *See* *Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988) ("merely resorting to the courts and being on the winning side of a lawsuit does not make a [private] party a joint actor with the judge" (alteration in original, quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)), and "[i]nvoking state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to

satisfy section 1983's state action requirement"); *see also* *Briley v. California*, 564 F.2d 849, 855 (9th Cir. 1977) ("We have repeatedly held that a privately-retained attorney does not act under color of state law for purposes of actions brought under the Civil Rights Act."); *Haldane v. Chagnon*, 345 F.2d 601, 604–05 (9th Cir. 1965) (concluding that private attorneys were "not State officers," "did not act in conspiracy with a State officer [*i.e.*, two judges and/or a bailiff] against whom appellant could state a valid claim," given that such officers had immunity from suit, and thus, were not subject to liability under § 1983). The Court is persuaded that Brooks cannot possibly cure her pleading, and thus, leave to amend will not be granted. The pending Rule 12(b)(6) motion is GRANTED, and all of Brooks's § 1983 claims against Villacin and the Firm, who are not state actors, are DISMISSED for failure to state a claim upon which relief may be granted.

### B. Plaintiff's Motion for Partial Summary Judgment

Because the Court cannot, for the reasons explained earlier, grant the relief requested by Brooks in her motion for partial summary judgment, *i.e.*, declaring *Cooney II* void, Brooks's Rule 56 motion is DENIED. *See* Fed. R. Civ. P. 56(a) (requiring a moving party to show *inter alia* entitlement to "judgment as a matter of law").

### C. Liberty/Stigma (Count 1, Subcount C, Part 2) and Defamation (Count V)

Although Judge Chung and Ennis have not separately moved for dismissal of the claims asserted against only them (or one of them), the Court is duty bound to sua sponte evaluate its subject matter jurisdiction, and the Court is of the view that the *Rooker–*

*Feldman* doctrine also requires dismissal of the following claims: (i) the claim against Judge Chung and Ennis for deprivation of liberty interest via “administrative [pro se] status change” (Count 1, Subcount C, Part 2); and (ii) the claim against Judge Chung for defamation (Count V). In her deprivation-of-liberty-interest claim, Brooks asserts that her designation as “pro se” when appearing before Division I was defamatory and stigmatizing. *See* Compl. at ¶¶ 110–11 (docket no. 1). In her defamation claim, Brooks alleges that statements contained in the *Cooney II* decision, which was authored by Judge Chung, are “false” and “malign” Brooks’s “professional competence, ethical integrity, and honesty.” *Id.* at ¶ 119. In bringing these two claims, Brooks challenges the correctness of the Washington Court of Appeals’ opinion in *Cooney II*, which indicates that Brooks appeared pro se, describes as “disingenuous at best” Brooks’s argument that Cooney’s reliance on *Marriage of Cooney & Brooks* “somehow amounts to misconduct,” and concludes that Brooks’s motion to disqualify Cooney’s counsel “is similarly disingenuous.” *See* 2025 WL 1684900, at *1 (list of attorneys) & *6. In alleging that these components of the *Cooney II* decision are stigmatizing and/or defamatory, Brooks is seeking relief that would “effectively reverse the state court decision or void its ruling,” *see Fontana Empire*, 307 F.3d at 992, and that would be precluded by the *Rooker–Feldman* doctrine. Thus, as indicated below, Brooks is directed to show cause why these liberty/stigma and defamation claims should not also be dismissed.

/ / /

/ / /

/ / /

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendants Villacin's and Smith Goodfriend P.S.'s motion to dismiss, docket no. 20, is GRANTED; all counts against Villacin and the Firm are DISMISSED for failure to state a claim, and Count I, Subcounts A and C, Part 1, and Count IV, Part 1 are alternatively DISMISSED for lack of subject-matter jurisdiction;

(2) Defendants Judge Chung's and Ennis's joinder motion, docket no. 31, is GRANTED, and the following claims against Judge Chung and Ennis are DISMISSED for lack of subject matter jurisdiction: (i) deprivation of property interest (Count 1, Subcount A); (ii) deprivation of liberty interest via "merits-based extinguishment" of "contractual property assets" (Count 1, Subcount C, Part 1); and (iii) violation of the Privileges and Immunities Clause (discriminatory treatment based on Oregon citizenship) in connection with the "merits-based strike" of the arbitration demand (Count IV, Part 1);

(3) Plaintiff's motion for partial summary judgment, docket no. 3, is DENIED;

(4) The following claims remain pending against Judge Chung and/or Ennis[6]: (a) deprivation of equal process (Count 1, Subcount B); (b) deprivation of liberty interest via "administrative [pro se] status change" (Count I, Subcount C, Part 2); (c) retaliation in

---

[6] Immunity defenses have been pleaded, *see* Answer at 11, ¶¶ 6 & 7 (docket no. 23); *see also* Joint Status Report at 3 (docket no. 36), but the subject has not yet been briefed by the parties. Notwithstanding Local Civil Rule 7(e), which restricts parties from filing "contemporaneous dispositive motions, each one directed toward a discrete issue or claim," Judge Chung and Ennis are GRANTED leave to file an early dispositive motion concerning judicial and/or qualified immunity without affecting their ability to present a later dispositive motion on other grounds.

violation of First Amendment (Count II); (d) violation of the Equal Protection Clause of the Fourteenth Amendment (Count III); and (e) defamation (Count V) (asserted against only Judge Chung);

(5) Brooks is DIRECTED to SHOW CAUSE within twenty-eight (28) days of the date of this Order why the Court should not dismiss for lack of subject matter jurisdiction (i) the claim against Judge Chung and Ennis for deprivation of liberty interest via “administrative [pro se] status change” (Count 1, Subcount C, Part 2), and (ii) the claim against Judge Chung for defamation (Count V); Judge Chung and/or Ennis may file a response within fourteen (14) days after Brooks’s filing, and neither Brooks’s filing nor Judge Chung’s and/or Ennis’s response shall exceed twelve (12) pages in length; no reply or other brief shall be filed on this subject unless requested by the Court;

(6) Having reviewed the parties’ Joint Status Report filed August 17, 2026, docket no. 36, the Court will issue a separate scheduling order setting this matter for jury trial to commence on November 15, 2027;

(7) The Clerk is directed to send a copy of this Order to all counsel of record and to plaintiff pro se.

IT IS SO ORDERED.

Dated this 9th day of November, 2026.

Thomas S. Zilly
United States District Judge